IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| Mothers Against Drunk Driving, | ) | Civil Action No. 2:16-cv-03289-DCN |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | COMPLAINT |
| | ) | |
| Donna Jarrell and Rick Jarrell, individually and doing business as Mothers of Drunk Drivers, , | ) ) ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Mothers Against Drunk Driving ("MADD" or "Plaintiff") alleges for its Complaint against Defendants Donna Jarrell and Rick Jarrell, individuals doing business as Mothers of Drunk Drivers, as follows:

1. This is a trademark infringement and dilution action brought pursuant to the trademark laws of the United States, known as the Lanham Act, Title 15, United States Code §1051 *et seq*. and supplemental state law claim for unfair competition and state law claims for trademark infringement, dilution, and injury to business reputation.

2. Mothers Against Drunk Driving is a District of Columbia non-profit corporation with its principal place of business in Irving, Texas.

3. Upon information and belief, Defendants Donna Jarrell and Rick Jarrell are individuals and U.S. citizens residing in South Carolina.

4. Upon information and belief, Defendant Mothers of Drunk Drivers is an unincorporated organization doing business in Charleston, South Carolina.

5. This Court has jurisdiction over this matter pursuant to the Lanham Act, 15 U.S.C. § 1121, 28 U.S.C. § 1338(a), and 28 U.S.C. § 1331.

6. Venue is proper within this District pursuant to 28 U.S.C. § 1391(b) because Defendants reside in and are doing business in this District, the alleged infringing use is in this District, and a significant number of events leading up to this dispute and potential for confusion involve this District.

## FACTUAL BASIS

7. This case is about Defendants' intentional and willful use of MADD's trademarks and service marks and use of that intellectual property in connection with the operation of Defendants' newly established organization, Mothers of Drunk Drivers or MODD, resulting in likely confusion among consumers and damage to MADD.

## MADD and MADD's Well-Known Marks

8. MADD was founded in 1980 by a mother whose daughter was killed by a drunk driver.

9. MADD is a leading national non-profit with chapters nationwide, which use the MOTHERS AGAINST DRUNK DRIVING and MADD marks in connection with its goods and services.

10. Over the past 36 years, MADD has become the nation's largest non-profit working to protect families from drunk driving; serving the victims of this violent crime; and, working to stop underage drinking. MADD engages in fundraising to fund its programs and support its victim services.

11. MADD is currently promoting awareness of the dangers and consequences of driving under the influence of alcohol and drugs, preventing alcohol and other drug use among our nation's youth, and providing support services for the victims of drunk driving.

12. Over the past 36 years, MADD has evolved into one of the most widely supported, well known, and well-liked non-profit organizations in America.

13. In order to carry out its mission, MADD has extensively utilized various trademarks and service marks, most of which incorporate the famous MADD or MOTHERS AGAINST DRUNK DRIVING marks.

14. MADD is the owner of Federal Service Mark Registration No. 1,250,706 for "MADD," registered September 6, 1983, for association services related to promoting the interests of individuals opposed to drunk driving, together with all common law rights in the service mark "MADD." This registration is and has been in full force and effect, is valid in all respects, and has become incontestable under 15 U.S.C. § 1065. A copy of the registration certificate is attached as Exhibit A.

15. The MADD mark is famous in South Carolina and throughout the United States.

16. MADD is the owner of Federal Service Mark Registration No. 1,603,041 for "MOTHERS AGAINST DRUNK DRIVING," registered June 19, 1990, for association services related to promoting the interests of individuals opposed to drunk driving, together with all common law rights in the service mark "MOTHERS AGAINST DRUNK DRIVING." This registration is and has been in full force and effect, is valid in all respects, and has become incontestable under 15 U.S.C. § 1065. A copy of the registration certificate is attached as Exhibit B.

17. The MOTHERS AGAINST DRUNK DRIVING mark is famous in South Carolina and throughout the United States.

18. MADD continues to build its "family" of MADD and MOTHERS AGAINST DRUNK DRIVING marks.

19. MADD is also the owner of the following other Federal Trademark and Service Mark Registrations incorporating "MADD" or "MOTHERS AGAINST DRUNK DRIVING" many of them incontestable under 15 U.S.C. § 1065:

| | |
|---|---|
| CAMPAIGN TO ELIMINATE DRUNK DRIVING MADD & Design | Reg. No. 4,311,409 |
| CAMPAIGN TO ELIMINATE DRUNK DRIVING MADD & Design | Reg. No. 4,412,941 |
| CAMPAIGN TO ELIMINATE DRUNK DRIVING MADD & Design | Reg. No. 4,260,059 |
| MADD | Reg. No. 1,250,706 |
| MADD | Reg. No. 4,929,998 |
| MADD & Design | Reg. No. 1,558,546 |
| MADD & Design | Reg. No. 4,075,293 |
| MADD & Design | Reg. No. 4,100,167 |
| MADD DASH | Reg. No. 2,187,624 |
| MADD POWER OF COMMUNITY & Design | Reg. No. 4,385,339 |
| MADD POWER OF COMMUNITY & Design | Reg. No. 4,385,341 |
| MADD POWER OF COMMUNITY | Reg. No. 4,385,340 |
| MADD POWER OF YOU(TH) & Design | Reg. No. 4,262,624 |
| MADD POWER OF YOU(TH) & Design | Reg. No. 4,262,626 |
| MADD PROPS | Reg. No. 4,229,916 |

4

| | |
|---|---|
| MADD SMART | Reg. No. 4,557,345 |
| MADD SMART | Reg. No. 4,557,346 |
| MADD TIE ONE ON FOR SAFETY & Design | Reg. No. 4,227,257 |
| MADD TIE ONE ON FOR SAFETY & Design | Reg. No. 4,258,629 |
| MADD TIE ONE ON FOR SAFETY & Design | Reg. No. 4,227,259 |
| MADD VICTIM SERVICES | Reg. No. 1,998,125 |
| MADD VICTIM SERVICES & Design | Reg. No. 4,371,424 |
| MADD YOUTH IN ACTION | Reg. No. 3,090,158 |
| MADDVOCATE | Reg. No. 1,645,240 |
| MOTHERS AGAINST DRUNK DRIVING | Reg. No. 1,603,041 |
| POWER OF PARENTS IT'S YOUR INFLUENCE BY MADD | Reg. No. 3,797,504 |
| POWER OF PARENTS IT'S YOUR INFLUENCE BY MADD | Reg. No. 4,012,966 |
| POWER OF PARENTS IT'S YOUR INFLUENCE. BY MADD & Design | Reg. No. 4,012,965 |
| POWER OF PARENTS IT'S YOUR INFLUENCE. BY MADD & Design | Reg. No. 3,797,500 |
| POWER OF PARENTS MADD & Design | Reg. No. 4,199,920 |
| POWER OF PARENTS MADD & Design | Reg. No. 4,199,921 |
| POWER OF PARENTS MADD & Design | Reg. No. 4,199,922 |
| PROTECTING YOU PROTECTING ME MADD & Design | Reg. No. 3,833,641 |
| VICTIM IMPACT PANELS MADD & Design | Reg. No. 1,628,711 |
| VICTIM IMPACT PANELS MADD & Design | Reg. No. 4,350,798 |
| VICTIM IMPACT PANELS MADD & Design | Reg. No. 4,350,797 |

| | |
|---|---|
| WALK LIKE MADD | Reg. No. 3,556, 975 |
| WALK LIKE MADD & Design | Reg. No. 4,235,048 |
| WALK LIKE MADD & Design | Reg. No. 4,219,202 |
| X WALK LIKE MADD | Reg. No. 4,844,931 |

20. Copies of these registration certificates are attached as Exhibit C.

21. MADD is the owner of several common law trademarks and service marks incorporating "MADD" and "MOTHERS AGAINST DRUNK DRIVING" used in association with educational materials and in association with services promoting awareness of the dangers and consequences of driving under the influence of alcohol, the prevention of alcohol and other drug use among youth, and the provision of services for the victims of drunk driving, and related products.

22. The federal registrations identified in Exhibits A, B and C, as well as the common law marks identified herein are collectively the "MADD Marks."

23. MADD's use and ownership of the MADD Marks entitle it to broad and exclusive rights to use the marks nationwide in connection with its goods and services, including in the state of South Carolina.

24. MADD has consistently used the MADD Marks and has renewed and maintained its federal registrations.

25. Through the decades of use, MADD has acquired considerable goodwill and customer recognition in its MADD Marks in connection with the goods and services offered thereunder, including association and charitable services.

26. Plaintiff's MADD Marks are valuable financial assets to its business.

27. MADD relies on its valuable reputation and credibility to carry out its mission, which depends on its continued independence from other organizations.

### Defendants' Unlawful Activities

28. As part of their association services, Defendants are soliciting donations and engaging in various charitable services under the marks MOTHERS OF DRUNK DRIVERS and MODD, which are confusingly similar to the services offered under Plaintiff's MADD Marks. A copy of Defendants' website showing charitable services is attached as Exhibit D. A copy of Defendants' GoFundMe page soliciting donations is attached as Exhibit E. A copy of Defendants' Facebook page is attached as Exhibit F.

29. Defendants have offered goods under the name and designations MODD and MOTHERS OF DRUNK DRIVERS, which constitute colorable imitation and substantial infringement of MADD's distinctive MADD Marks.

30. Defendants are not endorsed by, sponsored by, or affiliated with MADD in any way.

31. On information and belief, Defendants were familiar with the high level of acceptance by the public of MADD's goods and services offered by MADD under its MADD Marks.

32. On information and belief, Defendants were aware of the goods and services offered under Plaintiff's MADD Marks at the time Defendants adopted the designations MODD and MOTHERS OF DRUNK DRIVERS and began doing business under the same.

33. Despite constructive notice of MADD's federally-registered MADD Marks, Defendants began using the nearly identical MODD and MOTHERS OF DRUNK DRIVERS

marks in the U.S. in connection with its association and charitable services, which is likely to cause consumer confusion or mistake.

34. Defendants are currently using the MODD and MOTHERS OF DRUNK DRIVERS marks in connection with association and charitable services on the following websites: http://www.mothersofdrunkdrivers.org; https://www.facebook.com/modd.ORG; https://www.youtube.com/channel/UCs4qqXoSCQSGck5rvbn5k1Q; https://www.gofundme.com/m-o-d-d; and at Defendants' location in North Charleston, South Carolina.

35. Defendants' use of the MODD and MOTHERS OF DRUNK DRIVERS marks in connection with association and charitable services will inevitably cause consumer confusion and constitutes a violation of MADD's federal and common law trademark rights. Consumers are likely to confuse the parties' charitable and association services and/or related products or mistakenly believe that the parties' goods and services are associated, sponsored or endorsed by the other.

36. Defendants knew or should have known that the selection and use of the marks MODD and MOTHERS OF DRUNK DRIVERS would enable Defendants to trade on the extensive and valuable goodwill and reputation belonging to MADD.

37. On information and belief, Defendants are advertising and promoting themselves and their goods under the names MODD and MOTHERS OF DRUNK DRIVERS in the same channels of commerce through which MADD promotes its goods and services.

38. In addition to having constructive notice of MADD's federally registered MADD Marks, Defendants received actual notice from MADD beginning in June 2016.

39. After responding to MADD's outside counsel's initial notice of infringement demanding Defendants cease all use of the MODD and MOTHERS OF DRUNK DRIVERS marks immediately, Defendants channeled further correspondence through their outside counsel.

40. On July 21, 2016 MADD's outside counsel had a telephone conversation with Defendants' outside counsel regarding the demand letter and Plaintiff's request that Defendants' cease all use of the MODD and MOTHERS OF DRUNK DRIVERS marks.

41. In August 2016, MADD's outside counsel sent follow up emails to Defendants' counsel demanding that Defendants cooperate with the initial demand letter.

42. MADD attempted to reach a resolution with Defendants, but after numerous delays by Defendants, Defendants would not agree to terms that would alleviate the likelihood of confusion between Plaintiff's MADD Marks and Defendants' MODD and MOTHERS OF DRUNK DRIVERS marks.

43. On information and belief, Defendants continue to use the MODD and MOTHERS OF DRUNK DRIVERS marks, despite knowledge of MADD's trademark rights and express objections to their use.

44. On information and belief, Defendants' acts have been and are being committed with a deliberate purpose and intent of appropriating and trading upon MADD's goodwill and reputation.

45. On information and belief, Defendants' acts have been and are being committed with a deliberate purpose and intent of competing with MADD for fundraising, thereby injuring MADD and MADD's fundraising efforts. Money raised by Defendants due to their unlawful use of marks that are confusingly similar to the MADD Marks is money that could have gone to MADD to support MADD's mission.

46. Defendants' continued unauthorized use of marks that are confusingly similar to the MADD Marks is willful and intentional.

47. As a result of Defendants' unauthorized use of the MODD and MOTHERS OF DRUNK DRIVERS marks, and their refusal to cease use, MADD has suffered and will continue to suffer damages and irreparable harm to its goodwill and reputation, as well as its ability to distinguish its products and services from those of Defendants in the minds of consumers.

### **FOR A FIRST CAUSE OF ACTION**
(Federal Trademark Infringement under The Lanham Act)

48. MADD repeats and realleges and incorporates paragraphs 1 through 47 as if fully set forth in this paragraph.

49. For over 36 years, MADD has accrued common law rights through its use of the MADD and MOTHERS AGAINST DRUNK DRIVING marks.

50. MADD filed for federal trademark protection for the mark MADD on February 26, 1982 (Serial No. 73/352,106). The registration for MADD (Reg. No. 1,250,706) issued on September 6, 1983. MADD's February 26, 1982 filing date constitutes constructive use of MADD, nationwide, by MADD, conferring a right of priority, nationwide in effect, with connection to the association and charitable services specified therein. 15 U.S.C. § 1057(c).

51. MADD filed for federal trademark protection for the mark MOTHERS AGAINST DRUNK DRIVING on February 28, 1989 (Serial No. 73/783,729). The registration for MOTHERS AGAINST DRUNK DRIVING (Reg. No. 1,603,041) issued on June 19, 1990. MADD's February 28, 1989 filing date constitutes constructive use of MOTHERS AGAINST DRUNK DRIVING, nationwide, by MADD, conferring a right of priority, nationwide in effect, with connection to the association and charitable services specified therein. 15 U.S.C. § 1057(c).

52. Pursuant to 15 U.S.C. §1057(b) MADD's federal registrations serve as prima facie evidence of the validity of the registered marks, of MADD's ownership of the marks and of MADD's exclusive right to use the registered marks in commerce in connection with the goods and services specified in its registrations. 15 U.S.C. § 1057(b).

53. Despite constructive notice since 1982 for MADD and 1989 for MOTHERS AGAINST DRUNK DRIVING, Defendants adopted nearly identical marks for use in connection with nearly identical services.

54. On information and belief, Defendants' earliest claimed common law use of MODD and MOTHERS OF DRUNK DRIVERS was in 2016, over 27 years after MADD's constructive notice of its rights through its federal filing of the MADD and MOTHERS AGAINST DRUNK DRIVING marks. A copy of the Defendants' website showing the creation date is attached hereto as Exhibit D.

55. Defendants' unauthorized adoption and use of marks confusingly similar to Plaintiff's MADD and MOTHERS AGAINST DRUNK DRIVING marks in connection with similar services has caused or is likely to cause customers to be confused as to the origin of the services or to be misled into believing the parties are associated, affiliated or sponsored or endorsed by the other, all in violation of MADD's longheld trademark rights and in violation of 15 U.S.C. § 1114.

56. Defendants' conduct is willful and conducted with actual knowledge of MADD's marks.

57. Defendants' unlawful conduct has caused and is causing irreparable damage to the reputation and goodwill associated with Plaintiff's MADD and MOTHERS AGAINST DRUNK DRIVING marks.

11

58. Defendants' acts, including their refusal to cease use after actual notice of their infringement, has injured MADD and will continue to cause damage and irreparable harm unless Defendants are restrained and enjoined from such further conduct.

## FOR A SECOND CAUSE OF ACTION
(False Representations in Commerce under the Lanham Act)

59. MADD repeats and realleges and incorporates paragraphs 1 through 58 as if fully set forth in this paragraph.

60. Defendants' intentional, unlawful, and unauthorized use of marks that are confusingly similar to Plaintiff's MADD and MOTHERS AGAINST DRUNK DRIVING marks is likely to cause confusion, mistake, or deception as to origin, sponsorship or approval of Defendants' services and therefore constitutes false representations in commerce in violation of 15 U.S.C. § 1125(a)(1)(A).

61. Defendants' conduct is willful and conducted with actual knowledge of MADD's marks.

62. Defendants' acts, including their refusal to cease use after actual notice of their infringement, has injured MADD and will continue to cause damage and irreparable harm unless Defendants are restrained and enjoined from such further conduct.

## FOR A THIRD CAUSE OF ACTION
(Common Law Trademark Infringement)

63. MADD repeats and realleges and incorporates paragraphs 1 through 62 as if fully set forth in this paragraph.

64. MADD owns all rights, title, and interest in and to the MADD and MOTHERS AGAINST DRUNK DRIVING marks through its use of the marks for over 36 years, including all common law rights in such marks. The MADD Marks have derived a secondary meaning

which MADD's customers associate with MADD. MADD is, therefore, entitled to be free of competitive use of the unregistered names, logos, and other designs confusingly similar to the MADD Marks.

65. Defendants have misappropriated Plaintiff's MADD Marks through their adoption and use of marks that are confusingly similar with the MADD Marks in connection with similar products and services. This use by Defendants is likely to cause confusion, or to cause mistake, or to deceive the customer as to the affiliation, connection, or association of Defendants with MADD, or as to the origin, affiliation, sponsorship, or approval by MADD of Defendants' goods and services. Further, Defendants' use of marks that are confusingly similar with the MADD Marks enables Defendants to benefit unfairly from MADD's reputation and success, thereby giving Defendants' infringing goods and services commercial value that they would not have otherwise.

66. Defendants have acted with knowledge of MADD's ownership of the MADD Marks and with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill symbolized thereby.

67. MADD is informed and believes that Defendants have raised money and gained revenue at MADD's expense by virtue of their unfair trade practices to which they are not in law or equity entitled.

68. Defendants' acts constitute trademark infringement in violation of the common law of the State of South Carolina. MADD has sustained damage as a direct and proximate result of Defendants' unfair trade practices in an amount to be proven at trial.

69. Upon information and belief, Defendants intend to continue their infringing actions, unless restrained by this Court.

**FOR A FOURTH CAUSE OF ACTION**
(Common Law Unfair Competition)

70.  MADD repeats and realleges and incorporates paragraphs 1 through 69 as if fully set forth in this paragraph.

71.  The foregoing acts of Defendants permit Defendants to use and benefit from the goodwill and reputation earned by MADD and to obtain a ready customer acceptance of Defendants' services, and constitute unfair competition in violation of South Carolina common law, for which MADD is entitled to recover any and all remedies provided by such common law.

72.  Upon information and belief, Defendants have made and will continue to make substantial revenue and gains to which they are not in law or equity entitled.

73.  MADD is informed and believes that Defendants have gained revenue at MADD's expense by virtue of their unfair trade practices to which they are not in law or equity entitled.

74.  MADD has sustained damage as a direct and proximate result of Defendants' unfair trade practices in an amount to be proven at trial.

**FOR A FIFTH CAUSE OF ACTION**
(Trademark Dilution in Violation of the Lanham Act)

75.  MADD repeats and realleges and incorporates paragraphs 1 through 74 as if fully set forth in this paragraph.

76.  Plaintiff's MADD mark, MOTHERS AGAINST DRUNK DRIVING mark, and other of Plaintiff's MADD Marks, have become famous as a result of many years of nationwide use and promotion of the marks by MADD.

77.  Plaintiff's MADD mark, MOTHERS AGAINST DRUNK DRIVING mark, and other of Plaintiff's MADD Marks, were famous prior to Defendants' adoption of their marks.

78. Defendants' unauthorized use of the MODD and MOTHERS OF DRUNK DRIVERS marks in interstate commerce in the sale, advertising, and promotion of their services dilutes the distinctiveness, strength and value of MADD's famous MADD and MOTHERS AGAINST DRUNK DRIVING marks through blurring. Such acts constitute trademark dilution in violation of Section 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1).

79. Defendants' trademark dilution has injured MADD.

80. Defendants' unauthorized use of the MODD and MOTHERS OF DRUNK DRIVERS marks, as alleged herein, with knowledge of MADD's famous MADD Marks constitutes a willful intent to cause dilution of the famous MADD Marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

81. MADD has no adequate remedy at law for this injury.

82. Pursuant to section 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1), MADD is entitled, subject to the principles of equity and upon such terms as the Court deems reasonable, to an injunction against Defendants' use of the MODD and MOTHERS OF DRUNK DRIVERS marks.

**FOR A SIXTH CAUSE OF ACTION**
(Violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d))

83. MADD repeats and realleges and incorporates paragraphs 1 through 82 as if fully set forth in this paragraph.

84. Defendants own and operate the domain name mothersofdrunkdrivers.org.

85. Defendants' intentional, unlawful, and unauthorized use of a mark that is confusingly similar to Plaintiff's MOTHERS AGAINST DRUNK DRIVING mark in the domain name for their website has been done with a bad faith intent to profit from Plaintiff's MOTHERS AGAINST DRUNK DRIVING mark in violation of 15 U.S.C. § 1125(d).

86. Plaintiff's MOTHERS AGAINST DRUNK DRIVING mark is and was distinctive and famous at the time of Defendants' registration of the mothersofdrunkdrivers.org domain name.

87. Defendants' conduct is willful and conducted with actual knowledge of MADD's marks.

88. Defendants' acts, including their refusal to cease use after actual notice of their infringement, has injured MADD and will continue to cause damage and irreparable harm unless Defendants are restrained and enjoined from such further conduct.

WHEREFORE, Plaintiff Mothers Against Drunk Driving respectfully requests that this Court enter an order awarding to MADD the following relief:

1) That Defendants, jointly and severally, along with their officers, agents, servants, affiliates, employees, parent and subsidiary corporations, and all persons in privity or acting in concert with Defendants, be preliminarily and permanently enjoined from (a) using the marks MODD and MOTHERS OF DRUNK DRIVERS to offer services or goods similar to the products and services offered by MADD under the MADD Marks; and (b) using any confusingly similar mark or engaging in any other conduct that is likely to cause confusion, mistake, deceive, or otherwise mislead the public into believing that Defendants or Defendants' services or products are in some way connected to MADD.

2) That pursuant to the powers granted this Court under 15 U.S.C. § 1118, the Court issue an order directing Defendants to remove all signage and destroy all packaging and identification material in Defendants' possession or control that display or use the MODD and MOTHERS OF DRUNK DRIVERS marks.

3) That Defendants and all others acting in concert with it, be directed to account and pay over to MADD all revenues and charitable contributions raised by them and others acting with them from Defendants' unlawful conduct.

4) That Defendants are required to pay to MADD all damages suffered by MADD due to Defendants' unlawful conduct.

5) That pursuant to the powers granted in this Court under 15 U.S.C. § 1125(d), the Court order for the forfeiture or cancellation of the mothersofdrunkdrivers.org domain name or that the mothersofdrunkdrivers.org domain name be transferred to MADD.

6) That Defendants are required to pay all of MADD's litigation expenses, including reasonable attorneys' fees and costs of this action for Defendants' willful infringement.

7) Any other and further relief as the Court deems just and proper.

                **NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: s/ PATRICK C. WOOTEN
     Patrick C. Wooten
     Federal Bar No. 10399
     E-Mail: patrick.wooten@nelsonmullins.com
     151 Meeting Street / Sixth Floor
     Post Office Box 1806 (29402-1806)
     Charleston, SC  29401-2239
     (843) 853-5200

*Attorneys for Mothers Against Drunk Driving*

Charleston, South Carolina
October 3, 2016